**Yong Hong GUAN a/k/a Yong Hong Baccia, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 94–2534.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1995.

Decided March 7, 1995.

Stanley J. Horn, Chicago, IL (argued), for petitioner Yong Hong Guan aka Yong Hong Baccia.

Janet Reno, U.S. Atty. Gen., Washington, DC, Samuel Der–Yeghiayan, I.N.S., James B. Burns, Office of the U.S. Atty., Chicago, IL, Richard M. Evans, William J. Howard, Robert Kendall, Jr., David M. McConnell, Donald A. Couvillion (argued), U.S. Dept. of Justice, Civil Div., Immigration Litigation, Washington, DC, for respondent I.N.S.

Before COFFEY and EASTERBROOK, Circuit Judges, and McDADE, District Judge.*

McDADE, District Judge.

Petitioner, Yong Hong Guan, seeks review of a final decision of the Board of Immigration Appeals ("the BIA") denying her Motion to Reopen the Deportation Hearing. For the reasons set forth in this opinion, we deny the petition for review and affirm the decision of the BIA.

## BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. In July of 1982, Petitioner, while still living in China, married To Ha Quan. Mr. Quan is a permanent resident of the United States, originally hailing from Vietnam, who was living in Boston, Massachusetts, at the time of his marriage to Petitioner. Upon his return to the United States, Mr. Quan filed a visa petition for his wife. Petitioner also filed a visa application which stated that she wished to enter the United States for the purpose of joining her husband. Petitioner's visa application was approved. She entered the United States via Seattle, Washington, on August 29, 1983.

Although one would have thought that Petitioner would, upon entering the United States, travel with all possible haste to Boston to join her newly wed husband, such was not the case. Rather, Petitioner travelled to Chicago, Illinois, joined her sister, and secured employment. Petitioner rebuffed Mr. Quan's subsequent inquiries regarding her distant living arrangements and refused to join him in Boston. Indeed, Petitioner listed herself as single on her 1983 tax return. Petitioner's matrimonial maneuvering did not, however, go unnoticed. On August 23, 1985, deportation proceedings were commenced against Petitioner by the filing of an Order to Show Cause with the Office of the Immigration Judge in Chicago.

The Order to Show Cause charged that Petitioner was deportable because, *inter alia,* she procured her visa by fraud. A deportation hearing was held on this matter on January 12, 1987. It was determined at this hearing that Petitioner's marriage was a sham and a fraud and that Petitioner was deportable. An application for political asylum was subsequently filed by Petitioner. On September 2, 1987, an Immigration Judge ("the IJ") issued a written order which adopted the findings made in the January 12, 1987, hearing; denied Petitioner's applications for political asylum, withholding of deportation, and voluntary departure; and ordered that Petitioner be deported from the United States pursuant to the charges contained in the Order to Show Cause. Petitioner appealed the IJ's decision to the BIA on September 11, 1987.

On May 14, 1990, almost three years after being ordered deported, Petitioner gave birth to a child. As of August 29, 1990, Petitioner had been present in the United States for a period of seven years. On August 17, 1991, Petitioner remarried.[1] Petitioner's second husband, to whom she is still married, is a United States citizen. On November 30, 1991, Petitioner gave birth to a second child. Both of Petitioner's children are United States citizens.

On May 29, 1992, the BIA dismissed Petitioner's appeal. The BIA found that Petitioner's marriage to Mr. Quan was a sham and was entered into for the primary purpose of circumventing the immigration laws of the United States. The BIA's decision was affirmed by this Court on July 16, 1993. Petitioner, on September 7, 1993, filed a motion to reopen the deportation proceedings to apply for suspension of deportation. The motion to reopen was denied by the BIA in an order dated October 20, 1993. The BIA found in its order that Petitioner's motion should be denied because she had failed to establish *prima facie* eligibility for relief under 8 U.S.C. § 1254(a)(1) and in the exercise of its discretion based upon Petitioner's sham marriage. On February 28, 1994, Petitioner filed a second motion to reopen the deportation proceedings to apply for suspension of deportation. This motion was denied by the BIA in an order dated May 13, 1994. The

---

* Hon. Joe Billy McDade of the Central District of Illinois, sitting by designation.

1. Petitioner and Mr. Quan were divorced in August of 1987.

BIA denied Petitioner's motion in the exercise of its discretion based upon Petitioner's sham marriage with Mr. Quan. The BIA also denied Petitioner's motion based upon a finding that Petitioner had not established *prima facie* eligibility for relief under 8 U.S.C. § 1254(a)(1). In response to the BIA's adverse decision to her second motion to reopen, Petitioner filed the present petition for review.

Petitioner argues in her petition for review that she has made a *prima facie* showing of eligibility for relief under 8 U.S.C. § 1254(a)(1).[2] Petitioner states that she has resided continuously in the United States for more than seven years and is a person of good moral character. In addition, Petitioner contends that her deportation would work an extreme hardship upon her children, her husband, and herself. Petitioner claims that the BIA was obligated, but failed to consider any issues of hardship to her children and husband. Respondent counters by arguing that since the BIA based, in part, its decision to deny Petitioner's motion to reopen upon the exercise of discretion and provided a rational explanation for doing so, it need not have considered Petitioner's eligibility for relief under 8 U.S.C. § 1254(a)(1). As Respondent points out, Petitioner's sham marriage to Mr. Quan was the explanation advanced by the BIA when it exercised its discretion by not reopening Petitioner's deportation proceedings. Petitioner replies to Respondent's argument by contending that the BIA's denial of her motion to reopen was without a rational basis because the BIA did not offer an explanation as to the issue of extreme hardship to Petitioner's children and husband.

**2.** 8 U.S.C. § 1254(a)(1) states:

**(a) Adjustment of status for permanent residence; contents**

As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien (other than an alien described in section 1251(a)(4)(D) of this title) who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in

## ANALYSIS

■ There is no statutory authority for reopening a deportation proceeding. Rather, the authority for such motions arises from regulations promulgated by the Attorney General. *INS v. Doherty,* 502 U.S. 314, 321–23, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992); *INS v. Rios–Pineda,* 471 U.S. 444, 446, 105 S.Ct. 2098, 2100, 85 L.Ed.2d 452 (1985). In the present case, the applicable regulation is 8 C.F.R. § 3.2 which, in pertinent part, provides:

**Reopening or reconsideration**

The Board may on its own motion reopen or reconsider any case in which it has rendered a decision.... Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing....

The granting of a motion to reopen is, therefore, discretionary. *Doherty,* 502 U.S. at 323, 112 S.Ct. at 724; *Rios–Pineda,* 471 U.S. at 449, 105 S.Ct. at 2101–02. Accordingly, we shall review the BIA's decision to deny Petitioner's motion to reopen only for abuse of discretion. *Doherty,* 502 U.S. at 323–25, 112 S.Ct. at 725; *INS v. Abudu,* 485 U.S. 94, 105, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988); *Wijeratne v. INS,* 961 F.2d 1344, 1348 (7th Cir.1992). "In this circuit, the BIA does not abuse its discretion and the denial of a motion to reopen will be upheld 'unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Wijeratne,* 961 F.2d at

paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence;
....

1348 *quoting Achacoso–Sanchez v. INS,* 779 F.2d 1260, 1265 (7th Cir.1985).

■ In its order denying Petitioner's second motion to reopen, the BIA based its decision upon a finding that Petitioner had not established *prima facie* eligibility for relief under 8 U.S.C. § 1254(a)(1), and upon the exercise of its discretion based upon Petitioner's sham marriage to Mr. Quan. Petitioner does not attack the rationality of the BIA's exercise of discretion. Rather, Petitioner argues only that the BIA's decision was without a rational basis because the BIA did not offer an explanation as to the issue of extreme hardship to Petitioner's children and husband. Petitioner's argument is fatally flawed.

The BIA is not required to consider Petitioner's contention that she presented sufficient evidence to make out a *prima facie* showing of eligibility under 8 U.S.C. § 1254(a)(1). Even assuming that Petitioner's motion to reopen made out a *prima facie* case of eligibility for relief under § 1254(a)(1), the Attorney General was possessed of the discretion to deny the motion to reopen. *Abudu,* 485 U.S. at 105–06, 108 S.Ct. at 912–13; *Rios–Pineda,* 471 U.S. at 449, 105 S.Ct. at 2101–02; *Wijeratne,* 961 F.2d at 1348. If the Attorney General decides that relief should be denied as a matter of discretion, she need not even consider whether the threshold statutory eligibility requirements are met. *Abudu,* 485 U.S. at 105–06, 108 S.Ct. at 912–13; *Rios–Pineda,* 471 U.S. at 449, 105 S.Ct. at 2101–02; *INS v. Bagamasbad,* 429 U.S. 24, 25, 97 S.Ct. 200, 200–01, 50 L.Ed.2d 190 (1976). In *Abudu,* the Supreme Court stated:

> There are at least three independent grounds on which the BIA may deny a motion to reopen.... Third, in cases in which the ultimate relief is discretionary (asylum, suspension of deportation, and adjustment of status, but not withholding of deportation), the BIA may leap ahead, as it were, over the two threshold concerns (*prima facie* case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief.

485 U.S. at 105, 108 S.Ct. at 912. When a motion to reopen is denied on proper discretionary grounds, the new evidence is simply irrelevant, and the BIA is not required to examine it. *Wijeratne,* 961 F.2d at 1348. Accordingly, we find that the BIA need not have examined or even considered the evidence concerning extreme hardship to Petitioner, her husband, and her children, when denying Petitioner's motion to reopen based upon discretionary grounds.

■ We also find that the BIA did not abuse its discretion when denying Petitioner's motion to reopen based upon Petitioner's sham marriage to Mr. Quan.[3] Petitioner worked a fraud upon Mr. Quan and openly flouted the immigration laws of this country. In addition, the hardships of which she now complains were created by her at a time when she knew full well that she was under an order of deportation.[4] Also, Petitioner had not attained seven years of continuous presence in the United States until well after the beginning of her deportation proceedings. The Supreme Court in *Rios–Pineda* stated:

> One illegally in the United States who wishes to remain already has a substantial incentive to prolong litigation in order to delay physical deportation for as long as possible. (Citations omitted). The Attorney General can, in exercising his discretion, legitimately avoid creating a further incentive for stalling by refusing to reopen suspension proceedings for those who became eligible for such suspension only because of the passage of time while their

---

**3.** As noted above, Petitioner fails to argue that the BIA abused its discretion when denying her motion to reopen based upon her sham marriage to Mr. Quan.

**4.** We do not doubt that Petitioner's husband and Petitioner's children will suffer hardship as a result of Petitioner's deportation. The children in this case will, most likely, lose the love, guidance, and companionship of their mother. We take no pleasure in our decision today and wish to make it clear that we do not seek to inflict hardship upon Petitioner and her family as punishment for her dishonesty. Rather, we choose not to reward Petitioner's dishonesty and seek to avoid the creation of similar hardships in the future.

meritless appeals dragged on. (Citations omitted).

\* \* \* \* \* \*

Second, we are sure that the Attorney General did not abuse his discretion in denying reopening based on respondents' flagrant violation of the federal law in entering the United States, as well as respondent husband's willful failure to depart voluntarily after his request to do so was honored by the INS.... While all aliens illegally present in the United States have, in some way, violated the immigration laws, it is untenable to suggest that the Attorney General has no discretion to consider their individual conduct and distinguish among them on the basis of the flagrancy and nature of their violations. There is a difference in degree between one who enters the country legally, staying beyond the terms of a visa, and one who enters the country without inspection.

471 U.S. at 450–51, 105 S.Ct. at 2102–03. The Attorney General, acting through the BIA, was entitled to deny Petitioner's motion to reopen in an exercise of her discretion based upon Petitioner's illegal conduct. Were we to find otherwise, we would be creating the very sort of incentives which the Supreme Court decried in *Rios–Pineda.*

Given the Attorney General's broad discretion to grant or deny motions to reopen, *Doherty,* 502 U.S. at 321–25, 112 S.Ct. at 724; *Rios–Pineda,* 471 U.S. at 449, 105 S.Ct. at 2101–02, we find that the Attorney General did not abuse her discretion when denying Petitioner's motion to reopen based upon Petitioner's sham marriage. The BIA's decision was not an unreasoned or an arbitrary exercise of discretion. Rather, the BIA's explanation for its decision was grounded in legitimate concerns regarding the administration of the immigration laws and was determined on the basis of the particular conduct of Petitioner.

### CONCLUSION

For the foregoing reasons, the petition for review is DENIED.