72 F.3d 132
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Farhad Rajabzadeh HAKIMI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 94-3628, 95-1992.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 29, 1995.
Decided Dec. 13, 1995.
 
 Before CUMMINGS, FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 This is a consolidated appeal from a final order of deportation and the denial of a motion to reopen deportation proceedings before the Board of Immigration Appeals ("BIA"). The appeal from the order of deportation is based on the theory that delay by the Immigration and Naturalization Service ("INS") and the BIA in processing a petition for asylum and conducting deportation proceedings estops the government from using a drug crime committed in the interim as a basis for denying asylum and ordering deportation. The appeal from the denial of the motion to reopen turns on whether the BIA abused its discretion. Because neither argument has merit, we affirm the decision of the BIA.
 
 I. Background
 
 2
 Bureaucratic delays and the INS's overwhelming caseload usually benefit illegal aliens, but not this time. Farhad Rajabzadeh Hakimi, an Iranian Jew, first entered the United States as a nonimmigrant student in October, 1973. Because of the Iranian revolution and the subsequent brutalization of Jews, on October 23, 1979 Hakimi applied for political asylum. On May 19, 1980, the INS forwarded the asylum application to the State Department for an advisory opinion on the merits of the petition. Although the record does not contain a response, both the government and Hakimi agree that in September of 1981, the State Department advised the INS that asylum was not warranted. A few months later the State Department modified its position, indicating that Christians and Jews from Iran should be granted asylum.
 
 
 3
 On October 17, 1983, Hakimi's new attorney requested a new opinion from the State Department and on October 21, 1983 the immigration judge ("IJ") indicated he was willing to return Hakimi's asylum application to the State Department if he submitted a new asylum application, which Hakimi did on November 2, 1983. In February, 1984, the State Department issued a new opinion stating that if Hakimi could prove he was Jewish, he should be granted asylum.
 
 
 4
 A new hearing on the merits of his asylum application was scheduled for November 21, 1986. In preparation, Hakimi submitted evidence that he was a member of the Jewish faith as well as extensive evidence concerning conditions in Iran. But also during this protracted process Hakimi had been arrested and had pleaded guilty to possession and delivery of substantial quantities of marijuana. (The conviction was dated May 15, 1986.) The IJ took note of these negative facts, as well as evidence of Hakimi's exemplary behavior during his period of probation. Without a hearing he denied asylum. He also determined Hakimi was no longer eligible for withholding of deportation as a matter of discretion based on the drug convictions. He thus ordered Hakimi deported. Because the IJ did not hold a hearing, the BIA reversed and remanded the case for a full evidentiary hearing on the merits of the asylum application.
 
 
 5
 With yet another attorney, on August 23, 1990 Hakimi submitted an updated asylum application which was forwarded to the State Department for another advisory opinion. On October 16, 1990, the State Department again opined that, assuming he was Jewish, Hakimi had a well-founded fear of persecution. At a hearing on October 30, 1990, Hakimi established to the satisfaction of the IJ--and this point is undisputed on appeal--that he had a well-founded fear of persecution. He also detailed the circumstances surrounding his drug convictions and presented evidence that he is a successful businessman employing nine people, is married to a lawful permanent resident of the United States, and that he had a two-year old daughter who is a United States citizen and another child on the way.
 
 
 6
 Notwithstanding Hakimi's plight, the IJ found that Hakimi had been convicted of a particularly serious crime and thus declined to use his discretion to grant the asylum request. On the same basis the IJ held that Hakimi was statutorily ineligible for withholding of deportation. The IJ further held that even if relief were statutorily permissible after the drug convictions, Hakimi had failed to demonstrate a clear probability of persecution should he be returned to Iran and therefore did not merit withholding of deportation. Hakimi was then ordered deported to Iran.
 
 
 7
 Hakimi's timely appeal to the BIA was denied on October 11, 1994. The BIA upheld the IJ's finding that selling marijuana was a particularly serious crime. The BIA also rejected Hakimi's argument that the INS should be estopped from using his conviction as a basis for deportation because he would now be a United States citizen but for the INS' failure to process his asylum application expeditiously. The BIA held that no estoppel was merited since no willful misconduct had been established and that it had no authority to apply the doctrine of estoppel to the INS and thereby prevent it from fulfilling its duty under the law. Hakimi then filed a timely petition for review with this court.
 
 
 8
 While that petition was pending, Hakimi filed a motion to reopen with the BIA in which he submitted his children's birth certificates and his wife's application for naturalization. He alleged that the drug conviction was now ten years old, that he had three children who are United States citizens, and that his wife was about to become a United States citizen, all of which he claimed warranted the granting of asylum as a matter of discretion. Unpersuaded, on April 21, 1995 the BIA denied the motion to reopen, noting inter alia that Hakimi had failed to attach the requisite sworn affidavits and that, regardless, Hakimi's additional evidence was not "new, probative, and previously unavailable." Hakimi then filed another timely petition for review with this court which was consolidated with the former for our disposition.
 
 II. Discussion
 
 9
 Hakimi's petitions raise two issues. First, whether the INS is estopped from deporting Hakimi due to the prejudice he suffered from the delay in processing his asylum application. And second, whether the BIA abused its discretion in denying Hakimi's motion to reopen deportation proceedings.
 
 A. Estoppel
 
 10
 Hakimi contends that the only reason he is not a citizen today is that for years the INS delayed the processing of his asylum application. Given the circumstances of this case, he insists, the government should be estopped from deporting him.
 
 
 11
 To obtain an estoppel Hakimi must first show some affirmative misconduct on the part of the INS and not just delay. Mendoza-Hernandez v. INS, 664 F.2d 635, 639 (7th Cir.1981); Jaa v. INS, 779 F.2d 569, 572 (9th Cir.1986); U.S. v. Bazargan, 992 F.2d 844, 849 (8th Cir.1993) ("If estoppel is available in immigration cases, it can only be invoked if the government is guilty of affirmative misconduct."). This court has held that "affirmative misconduct which actually prejudiced an alien would estop the government from denying the alien the relief he requested" and that "[u]nexplained delays by the INS in its administrative procedures can amount to affirmative misconduct." Mendoza-Hernandez, 664 F.2d at 639 (emphasis added). Hakimi must also show "a detrimental change of position in reliance" on the government's actions. U.S. v. Shaw, 26 F.3d 700, 702 (7th Cir.1994).
 
 
 12
 Hakimi claims that the INS' delay was due in part to its gross negligence in losing his file and that this amounts to misconduct giving rise to an estoppel. However, it is not clear from the record that the file was actually lost. The government maintains the file was in its possession all along. Either way, the point cannot win the case for Hakimi. Misplacing an application for asylum, even negligently, does not, without more, result in an estoppel. Estoppel requires some affirmative misconduct on the part of the government; mere negligence is not enough. Hakimi has not shown--or even really alleged--any sort of affirmative misbehavior and nothing in the record suggests it should be implied. Thus, Hakimi's estoppel claim is missing a critical element.
 
 
 13
 Even if losing an immigration file could be classified as affirmative misconduct, Hakimi still must show a detrimental change in position due to his reliance on the government's actions. This he is unable to do. Hakimi argues that were it not for the INS' long delay he would have been a citizen before receiving his drug conviction in 1986. Due to the conviction and a change in the law, he is now subject to a more stringent standard for drug convictions that would not have applied to him had his application been processed more quickly. Of course this argument is specious. Estoppel is an equitable remedy. Heckler v. Community Health Services of Crawford, 467 U.S. 51, 58 (1984). A marijuana conviction does not display the "clean hands" necessary to open the door of equity. Precision Instrument Mfg. Co. v. Automotive M.M. Co., 324 U.S. 806, 814 (1945); U.S. v. Perez-Torres, 15 F.3d 403, 407 (5th Cir.1994). Hakimi may indeed have declined to seek other forms of relief from deportation under the assumption that his asylum application would be expeditiously processed, but he had no valid reliance interest in being granted asylum before he committed a crime nor in the law treating convicted drug dealers more leniently than it does now. We therefore reject Hakimi's estoppel argument.
 
 B Motion to Reopen
 
 14
 Hakimi maintains that in denying his motion to reopen the BIA abused its discretion by failing to consider the length of time since his conviction and his additional family ties as favorable factors for granting asylum and by giving weight to changes in the law cracking down on alien drug convicts. These contentions are without merit.
 
 
 15
 As we explained earlier this year, "[t]here is no statutory authority for reopening a deportation proceeding. Rather, the authority for such motions arises from regulations promulgated by the Attorney General." Guan v. I.N.S., 49 F.3d 1259, 1261 (7th Cir.1995); INS v. Doherty, 502 U.S. 314, 321-23 (1992). A decision by the BIA to grant or deny "a motion to reopen is, therefore, discretionary," subject on appeal to review "only for abuse of discretion." Guan, 49 F.3d at 1261. "In this circuit, the BIA does not abuse its discretion and the denial of a motion to reopen will be upheld unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." Wijeratne v. INS, 961 F.2d 1344, 1348 (7th Cir.1992); Guan, 49 F.3d at 1261.
 
 
 16
 We acknowledge here that it is certainly significant that the State Department twice opined that Jews from Iran had a well-founded fear of persecution and should be granted asylum. But that was obviously an objective determination. When applied to Hakimi, the finding was offset by a serious drug conviction that the IJ weighed heavily against him. The drug conviction also overrode the family considerations and the extended period of time the entire procedure took. While we could well disagree with how the IJ weighed these conflicting circumstances, we cannot say the decision was an abuse of discretion under these standards.
 
 
 17
 Thus, "[w]hen a motion to reopen is denied on proper discretionary grounds," any new evidence the alien might have presented "is simply irrelevant, and the BIA is not required to examine it." Id. at 1262. The Supreme Court likewise stated in INS v. Abudu, 485 U.S. 94 (1988), that in ruling on a motion to reopen in a case where the ultimate relief is discretionary (e.g., asylum), the BIA may simply determine that the alien would not be entitled to the underlying discretionary relief and deny the motion. Id. at 105.
 
 
 18
 Under these standards, if the BIA did not abuse its discretion in ruling that Hakimi does not merit a discretionary grant of asylum, we must uphold its denial of the motion to reopen. We find no abuse of discretion. Despite Hakimi's difficult situation, the fact is that under federal law he is an "aggravated felon."[1] In its ruling on the motion to reopen and in its prior ruling, the BIA took this into account together with the other factors in Hakimi's favor and determined as a matter of discretion that Hakimi did not merit political asylum. Given the severity with which Congress, which has plenary power over immigration, views the drug problem in this country, we cannot say that the BIA exercised its discretion inappropriately. And because Hakimi is not entitled to the relief he seeks, the motion to reopen was properly denied.
 
 III. Conclusion
 
 19
 For the foregoing reasons, the decisions of the Board of Immigration Appeals are
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Title 8 U.S.C. Sec. 1101(a)(43)(B) defines an "aggravated felony" to include "illicit trafficking in a controlled substance" as defined in 21 U.S.C. Sec. 802. Under 21 U.S.C. Sec. 802, a "controlled substance" includes those drugs listed in 21 U.S.C. Sec. 812, Schedule I, which includes "marihuana." 21 U.S.C. Sec. 812, Schedule I(c)(10). Thus, under federal law, Hakimi is an "aggravated felon."