# United States Court of Appeals
## For the First Circuit

No. 02-2291

MOHAMED J. KRAZOUN,

Petitioner,

v.

JOHN D. ASHCROFT, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Chief Judge</u>,

Cyr, <u>Senior Circuit Judge</u>,

and Lynch, <u>Circuit Judge</u>.

Desmond P. Fitzgerald and Fitzgerald & Company, LLP were on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division, Emily Anne Radford, Assistant Director, and Papu Sandhu, Senior Litigation Counsel, Office of Immigration Litigation, were on brief for respondent.

November 25, 2003

**CYR, <u>Senior Circuit Judge</u>.** Petitioner Mohamed Jamal Krazoun appeals from a Board of Immigration Appeals (BIA) decision which rejected his motion to reopen his deportation proceedings in order to determine whether he is entitled to permanent resident status based upon his September 2001 marriage to a permanent United States resident. We affirm the BIA decision.

**I**

**<u>BACKGROUND</u>**

Krazoun, a native and citizen of Syria, initially entered the United States on a student visa in 1979. In 1983, he married a United States citizen, Magnolia Arungo-Garcia, who petitioned the INS for a relative visa in Krazoun's behalf. However, after she had been subjected to verbal abuse, harassment, and threats from Krazoun, Arungo-Garcia obtained a restraining order against Krazoun, and withdrew her pending INS petition. One year later, the couple divorced.

In late 1989, Krazoun met Georgia Balesteri, a United States citizen; the two married in January 1990. In July 1990, Balesteri likewise obtained a restraining order against Krazoun, and the couple ceased living together. Nonetheless, in March 1991, based upon his marriage to Balesteri, Krazoun adjusted his immigration status to that of conditional permanent resident. <u>See</u> 8 U.S.C. § 1186a(a), (g)(1). Had the marriage endured for two years (<u>i.e.,</u> until March 1993), Krazoun and Balesteri would have

-2-

become entitled to petition the INS to adjust Krazoun's immigration status to that of permanent resident.  See id. at § 1186a(c), (d)(1).

In January 1993, Balesteri and Krazoun jointly submitted a motion attesting that they were continuing to cohabit.  Although the joint motion purportedly contained Balesteri's signature, the signature did not appear to match other samples of her handwriting. In addition, Balesteri failed to appear for three separate INS interviews at which she was to provide support for the joint motion.  Moreover, Krazoun himself misled INS interviewers to believe that (i) he continued to cohabit with Balesteri, and (ii) that Balesteri would appear at subsequent INS interviews, see 8 U.S.C. § 1186a(c)(1)(B); 8 C.F.R. § 216.4(b).  Eventually, the INS terminated the conditional resident status previously granted Krazoun.  After Balesteri finally filed for divorce from Krazoun in May 1994, the INS initiated deportation proceedings against Krazoun.

In November 1994, an immigration judge (IJ) ruled Krazoun deportable.  At the same time, Krazoun moved to continue the deportation proceedings so he could obtain an INS waiver of the requirement that he and Balesteri submit a joint petition to remove his conditional resident status, on the basis that Krazoun had entered into the 1990 marriage with Balesteri in "good faith," that it was not a sham marriage but instead had terminated for other

reasons.  See 8 U.S.C. § 1186a(c)(4) (waiver requirements).  As no divorce decree had yet been entered, however, the IJ denied the request, whereupon Krazoun appealed to the BIA.  Due to the fact that Krazoun's divorce became final in July 1995, however, the BIA remanded to the IJ to direct the INS to rule upon Krazoun's waiver application.

The INS denied the waiver application, finding (i) that Krazoun had fraudulently concealed the fact that his 1990 marriage to a permanent resident was a sham; and (ii) on occasion Krazoun had stated that he lived with Balesteri until April 1993, yet at other times he said until September 1993; whereas Balesteri's May 1994 divorce complaint represented that the two had ceased living together in July 1990, and Balesteri's mother asserted that they had never lived together at all following their marriage.

When the deportation proceedings resumed before the IJ in January 1998, Krazoun testified that (i) Balesteri lived with him, from time to time, until March 1993; (ii) Balesteri lived with him from mid-to-late-1992; and (iii) even though Balesteri previously had submitted an affidavit attesting that the two had met in "the late winter of 1989," viz., shortly before their marriage, Krazoun first met Balesteri in October 1988.  Moreover, Krazoun's brother testified that Krazoun and Balesteri had lived together for only six or seven months after their marriage.

The  IJ  sustained  the  1994  termination  of  Krazoun's

-4-

conditional residence status by the INS, as well as its denial of Krazoun's waiver petition, then ordered that Krazoun be deported. In addition, the IJ specifically found that Krazoun had married both Arungo-Garcia and Balesteri for the purpose of evading the United States immigration laws, based on the evidence that (i) Krazoun had misled the INS by stating that his wife would appear for the August 1993 INS interview, given that he testified at the hearing that he had ceased living with her in April 1993; (ii) Krazoun's prior statements to the INS – viz., that he had lived with Balesteri until September 1993 – were contradicted by the dates set forth in Balesteri's divorce action complaint (i.e., until July 1990) and by Krazoun's own brother (i.e., until June-July 1990); and (iii) both of Krazoun's former spouses, Arungo-Garcia and Balesteri, had obtained restraining orders against him shortly after their respective marriages.  After hearing Krazoun testify and observing his demeanor, the IJ found that Krazoun lacked credibility, and that he would "lie to get what he wants." The BIA summarily affirmed the IJ's decision in May 2002.  Krazoun did not petition for review.

    Moreover, Krazoun had married another United States citizen, Janice Gittino, in September 2001.  In June 2002, Krazoun petitioned the BIA to reopen his case, claiming that this third marriage was bona fide and that he and Gittino were expecting a child in October 2002.  The BIA rejected the Krazoun motion to

reopen on two grounds. First, without regard to whether the putative third marriage might entitle Krazoun to relief from deportation, the BIA decided to exercise its broad discretion not to reopen, due to Krazoun's demonstrated history of having entered into two previous marriages with the fraudulent intention to evade the immigration laws. Second, the BIA noted that Krazoun had never produced an approved visa petition – a condition precedent to the requested relief – and had failed to adduce clear and convincing evidence that the third marriage he entered into was bona fide. Krazoun now petitions for review.

## II

## DISCUSSION

Krazoun contends that the BIA erred in not granting the motion to reopen, in that (i) Krazoun adduced clear and convincing evidence that his third marriage was bona fide, which included the recent birth certificate of the couple's first child; (ii) the finding of fact made by the IJ in 1998 – that Krazoun's first marriage to Arungo-Garcia was fraudulent – was belied by the evidence that Arungo-Garcia needed a protective restraining order to curb the violence in their marriage relationship; and (iii) the denial of discretionary relief by the BIA conflicts with the legislative policy disfavoring deportations which divide families.

As we have observed previously, the strong public policy favoring expeditious deportation proceedings plainly bespeaks

disfavor of motions to reopen. See Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003). Thus, the BIA's denial of the Krazoun motion to reopen was proper, provided either that (i) Krazoun failed to establish the bona fides of his third marriage, entered into after the IJ's 1998 decision, see In re Velarde-Pacheco, 23 I. & N. Dec. 253, 256 (BIA 2002) (requiring that alien "present[] clear and convincing evidence indicating a strong likelihood that [his] marriage [during pending deportation proceedings] is bona fide"); 8 C.F.R. § 204.2(a) (same); or (ii) regardless whether he proved that his third marriage was bona fide, the BIA, in its discretion, denied Krazoun an adjustment of status, and that decision was neither arbitrary and capricious nor predicated upon a misinterpretation of applicable law. See Fesseha, 333 F.3d at 20; see also INS v. Rios-Pineda, 471 U.S. 444, 449 (1985); 8 C.F.R. § 3.2(a) ("The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.").[1]

As our statement of the background facts amply demonstrates, supra, the BIA decision denying the motion to open must be affirmed. Krazoun plainly failed to present clear and convincing evidence that his third marriage was bona fide.

---

[1]The BIA also denied Krazoun's motion because his pending relative visa petition had not been approved, a distinct prerequisite to a motion to reopen. See In re Velarde-Pacheco, 23 I. & N. Dec. at 256. Because we find ample alternative substantive grounds to uphold the BIA's decision, see infra, we bypass this issue.

Although he unquestionably documented the fact that he married Gittino in June 2002, the pertinent issue before the BIA was not whether Krazoun had married for the third time, but whether he did so once again with the intent to evade the immigration laws and to delay and impede imminent deportation. There can be no genuine question that the two earlier fraudulent marriages into which Krazoun entered, with intent to evade the immigration laws, gave rise to a common-sense inference, as well as the legitimate suspicion, that Krazoun's third marriage – more likely than not – had been entered into with the same illegitimate aim.[2]

Moreover, Krazoun's contention – that the bona fides of the first marriage was demonstrated by Arungo-Garcia's need to obtain a restraining order to stem the violence in their marriage relationship – may have been appropriate argumentation before the IJ in 1998, but nothing in the present record compelled the IJ to draw so curious a conclusion. See Oliva-Muralles v. Ashcroft, 328 F.3d 25, 27 (1st Cir. 2003) (noting that IJ's findings of fact may

---

[2]In addition to exposing himself to the risk of criminal prosecution, Krazoun's perjury would disqualify him from other discretionary relief, such as suspension of deportation or voluntary departure. See, e.g., Opere v. INS, 267 F.3d 10, 13-14 (1st Cir. 2001) (noting that any alien who, within seven years before his application for suspension of deportation, has given false testimony for the purpose of obtaining any immigration benefit is precluded from proving "good moral character," and thus is ineligible for a suspension of deportation). It is not surprising, therefore, that the Krazoun motion to reopen did not seek reconsideration of the earlier denial of his applications for suspension and voluntary departure.

be set aside only if "the evidence is so compelling that no reasonable fact-finder could fail to reach the contrary conclusion"). Insofar as there was conflicting evidence, we would accord the IJ's credibility determinations great deference. See Mendes v. INS, 197 F.3d 6, 13 (1st Cir. 1999). Even these formidable standards of review are no longer applicable, however, inasmuch as Krazoun did not petition this court in 1998 for review of the IJ's factual findings. Accordingly, this matter neither constitutes "new" material evidence, see INS v. Doherty, 502 U.S. 314, 323 (1992), nor provides a basis for the instant motion to reopen. See Fesseha, 333 F.3d at 20.

Finally, even assuming we were to conclude that Krazoun adduced clear and convincing evidence that the third marriage was other than a sham, it nonetheless remains that the BIA acted well within its discretion in bypassing such an inquiry and denying Krazoun a discretionary adjustment of status, based exclusively upon his history of recurrent immigration fraud. See Doherty, 502 U.S. at 322. Krazoun's prior violations were not only flagrant, but accompanied by abusive threats to his first two spouses. See Guan v. INS, 49 F.3d 1259, 1262-63 (7th Cir. 1995) (affirming BIA's discretionary denial of adjustment of status where petitioner previously had engaged in a flagrantly fraudulent marriage, then applied for adjustment of status based on an allegedly bona fide second marriage).

Moreover, the record is replete with evidence that Krazoun repeatedly lied to conceal these violations. For instance, he falsely testified that he had met Balesteri more than one year prior to their marriage, whereas in fact he met Balesteri in late 1989 and married her in January 1990; he lied again when he informed the INS that he cohabited with Balesteri until 1993, whereas he had ceased living with her a mere six or seven months following their marriage. Given this egregious record, and the cogent statement of the grounds upon which the BIA rejected Krazoun's motion to reopen, the exercise of its discretion was anything but arbitrary or capricious. See Fesseha, 333 F.3d at 20. Instead, the BIA properly concluded that Krazoun simply was up to his old tricks. See also INS v. Jong Ha Wang, 450 U.S. 139, 143 n.5 (1981) (noting that discretionary bypass is necessary to enable INS to thwart repeated delays of actual deportation by "aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case [and a right to a hearing]").

Accordingly, the BIA decision is hereby **affirmed**. **SO ORDERED**.