Angela CEDENO, et al., Petitioners,

v.

Tom RIDGE, et al., Respondents.

No. CIV.03–1442 JAF.

United States District Court,
D. Puerto Rico.

Sept. 17, 2004.

Raymond L. Sanchez–Maceira, Esq., Sanchez–Maceira Law Office, San Juan, PR, for Petitioners.

Humberto Garcia, Esq., United States Attorney, Lisa E. Bhatia–Gautier, Asst. U.S. Attorney, U.S. Attorney's Office, San Juan, PR, for Respondents.

## OPINION AND ORDER

FUSTE, Chief Judge.

Petitioners Ángela Cedeño (Petitioner Cedeño) and Francisca Espinal Cedeño (Petitioner Espinal), bring the present action against Respondents Tom Ridge, Secretary of the Department of Homeland Security; Eduardo Aguirre, Acting Director of the Bureau of Citizen and Immigration Services ("BCIS"); and the United States of America under 28 U.S.C. § 2241 (1994 & Supp.2003). *Docket Document No. 1.* Plaintiffs request that this court conduct a hearing, reverse the decision of the Board of Immigration Appeals ("BIA"), and remand the case to the BCIS.

Respondents move for summary judgment on the basis that, inter alia, this court lacks habeas corpus jurisdiction over Petitioners' claims. *Docket Document No. 16.*

## I.

### *Factual and Procedural Synopsis*

Petitioner Cedeño is Petitioner Espinal's mother, a native of the Dominican Republic. *Id.* Petitioner Cedeño was a lawful permanent resident of the United States until she naturalized on September 29, 1998. *Id.*

Petitioner Espinal is a native of the Dominican Republic. *Id.* She entered the United States without inspection on or about June 14, 1992. *Id.* On November 19, 1994, she married United States Citizen ("USC") José Antonio Reyes–Andino, who subsequently filed a Petition for Alien Relative, Form I–130, on Petitioner Espinal's behalf to adjust her status as a permanent resident. *Id.*

On May 22, 1995, the Puerto Rico Police arrested Petitioner Espinal and Immigration and Customs Enforcement ("ICE"), formerly Immigration and Naturalization Service ("INS"), processed Petitioner Espinal as a deportable alien. *Id.* Petitioner Espinal was served with an Order to Show Cause ("OSC"), charging her with deportability pursuant to section 241(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251 (1999 & Supp. 2003), as an alien who had entered the United States without inspection. *Docket Document No. 16, Exh. 6.* An arrest warrant was issued. *Docket Document No. 16, Exh. 7.*

On the same day, Petitioner Espinal signed a statement declaring that, in exchange for $1,500, USC José Antonio Reyes–Andino married her in order to obtain her immigration papers. *Docket Document No. 16, Exh. 9.* Later that day, USC spouse, José Antonio Reyes–Andino, went to the CIS office and, after being given his Miranda warnings in Spanish, signed a statement admitting that he married Petitioner Espinal in exchange for $1,500, in order to help her obtain immigration benefits. *Docket Document No. 16, Exhs. 10, 11.* USC José Antonio Reyes–Andino subsequently withdrew the petition he had filed on Petitioner Espinal's behalf. *Docket Document No. 16, Exh. 11.*

On June 13, 1995, the Immigration Judge ("IJ") held a hearing at which Petitioner Espinal admitted the allegation contained in the OCS, conceded deportability, and requested voluntary departure, which was set for October 13, 1995. *Docket Document No. 16.*

On August 11, 1995, Petitioner Espinal and USC José Antonio Reyes–Andino were divorced for mutual consent. *Docket Document No. 16, Exh. 15.*

On September 16, 1995, Petitioner Cedeño filed a Petition for Alien Relative, Form I–130, on behalf of her daughter, Petitioner Espinal. *Docket Document No. 16, Exh. 16.* On September 29, 1998, Petitioner Cedeño became a citizen of the United States through naturalization. *Docket Document No. 16, Exh. 1.* Petitioner Espinal's voluntary departure was subsequently extended to February 28, 1999. *Docket Document No. 16, Exh. 29.*

On December 1, 1998, Petitioner Espinal filed a motion to reopen with the Immigration Court, which was granted on March 23, 1999. *Docket Document No. 16, Exhs. 25, 26.* In response, the INS, seemingly confused, submitted a form showing that it was responding to a Motion to Terminate and Reply to Motion to Change Venue on the basis that the section 204(c) bar applied. *Docket Document No. 16, Exh. 28.* On April 9, Petitioner filed a motion to terminate the deportation proceedings. *Docket Document No. 16, Exh. 27.* On or about April 26, 1999, the INS filed a response and brief arguing that section 204(c) of the INA barred Petitioner Espinal from being eligible to receive a visa. *Docket Document No. 16, Exh. 29.*

At a hearing on August 27, 1999, based on a finding that Petitioner Espinal had entered into a sham marriage in order to receive immigration benefits, an IJ denied Petitioner Espinal's motion to terminate proceedings and entered a final order of deportation against her. *Docket Document No. 16, Exhs. 31, 32.* Petitioner Espinal filed an appeal of said decision to the BIA on August 30, 1999. *Docket Document No. 16, Exh. 32.* On March 25, 2003, the BIA upheld the IJ's decision and denied Petitioner Espinal's application for adjustment of status. *Docket Document No. 16, Exh. 39.*

On April 24, 2003, Petitioners filed the present complaint alleging violations of Petitioner Espinal's due process rights. *Docket Document No. 1.* Petitioners claim that Petitioner Espinal did not receive proper notice regarding the nature of her deportation proceedings. *Id.* The original OSC, which contained only charges regarding her initial entry without inspection, was never amended so as to put her on notice that she would be forced to defend herself against marriage fraud allegations. *Id.* Because she was not apprised of the nature of the charges against her, Petitioner Espinal was unable to properly prepare for the deportation hearing, and her due process rights were violated. *Id.*

On December 22, 2003, Respondents filed a motion for summary judgment. *Docket Document No. 16.* Petitioners filed an opposition to the motion for summary judgment on January 22, 2004. *Docket Document No. 19.*

## II.

### *Motion for Summary Judgment Standard under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment ... bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.,* 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the

nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

### III.

#### *Analysis*

In 1996, Congress made substantial changes to the immigration laws, including the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Pub.L. No. 104–208, Div. C., 110 Stat. 3009–546 (enacted Sept. 30, 1996). Under IIRIRA, which was intended to eliminate much of federal court judicial review of deportation orders, there are two sets of rules governing judicial review of deportation proceedings: the permanent rules [1] and the transitional rules.[2] *See* 8 U.S.C. § 1252 (1999 & Supp. 2003); IIRIRA § 309(c), as amended by Act of Oct. 11, 1996, § 2 Pub.L. No. 104–302, 110 Stat. 3657. The permanent rules apply only to cases in which the INS instituted removal proceedings [3] on or after April 1, 1997. *See id.; see also Goncalves v. Reno,* 144 F.3d 110, 116 (1st Cir.1998) (explaining the new statutory provisions). In contrast, the transitional rules apply to deportation proceedings commenced, but not completed before April 1, 1997. *See id.; Ruckbi v. INS,* 159 F.3d 18, 20–21 (1st Cir.1998). Because the deportation proceedings brought against Petitioner Espinal began in May, 1995, and a final deportation order was not issued until March 25, 2003, the IIRIRA transitional rules govern this case.

With regard to transitional changes in judicial review, IIRIRA § 309(c)(4) provides: [4]

1. The permanent rules can be found at 8 U.S.C. § 1252 (1999 & Supp.2003).

2. The transitional rules (IIRIRA 309(c)) have not been codified. They can be found in the historical and statutory notes following 8 U.S.C. § 1101 (1999 & Supp.2003).

3. IIRIRA abolished the former distinction under the INA between exclusion proceedings and deportation proceedings and "combin[ed] the two into a new proceeding known as a 'removal proceeding.'" *Goncalves v. Reno,* 144 F.3d 110, 115 n. 2 (1st Cir.1998).

4. We note here 8 U.S.C. § 1252(g) which states: "Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Although § 1252(g) applies to the IIRIRA transitional cases, the current case is not the type of "decision or action" contemplated by the statute. *See Reno v. Am.-Arab Anti–Discrimination Comm.,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999); *see also Chmakov v. Blackman,* 266 F.3d 210, 215 (3d Cir. 2001); *Liu v. INS,* 293 F.3d 36, 41 (2d Cir. 2002). Section 1252(g), therefore, does not alter our analysis under IIRIRA § 309(c)(4).

In the case in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act [Sept. 30, 1996], notwithstanding any provision of section 106 of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act to the contrary)—

. . . .

(E) there shall be no appeal of any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act [sections 1182(c), 1182(h), 1182(i), 1254, or 1255 (adjustment of status) of this title] (as in effect as of the date of the enactment of this Act).

IIRIRA § 309(c)(4) & 309(c)(4)(E).

It is clear that the decision in the present case was made under section 245 of the Immigration and Nationality Act ("INA")[5] in an effort for Petitioner Espinal to adjust her status as the unmarried daughter of a United States Citizen. We must, therefore, determine whether the decision to deny Petitioner Espinal's adjustment of status turns on a matter committed to agency discretion.

Section 309(c)(4)(E) does not bar all appeals, but only those involving "discretionary" decisions made under the enumerated sections. This language contrasts with IIRIRA § 309(c)(4)(G), which precludes "appeals" in cases of aliens who are inadmissible or deportable because they committed certain felonies. *Compare id.* § 309(c)(4)(E) ("[T]here shall be no appeal of any discretionary decision under [various sections of the INA] . . . ."), with *id.* § 309(c)(4)(G) ("[T]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed [certain criminal offenses] . . . ."); *see Ruckbi*, 159 F.3d at 21 (discussing absolute bar to any review by the courts of appeals in cases falling under § 309(c)(4)(G)). The question, thus, becomes one of what is meant by the term "discretionary decision." *Bernal–Vallejo v. INS*, 195 F.3d 56, 62 (1st Cir.1999). "It is clear that some aspects of a decision by the BIA as to adjustment of status require objective factual determinations and that Congress gave the agency no discretion as to these determinations, while other aspects of the decision are discretionary." *Id.*

Before an alien can be granted the discretionary relief of adjustment of status, she must be prima facie eligible to apply for adjustment of status. *See Westover v. Reno*, 202 F.3d 475, 480 (1st Cir.2000). Section 245 of the INA authorizes the Attorney General, "in his discretion and under such regulations as he may prescribe," to adjust an alien's status to that of "an alien lawfully admitted for permanent residence," as long as the alien satisfies certain enumerated statutory requirements. 8 U.S.C. § 1255(a). The alien must show: "(1) that he was inspected and admitted or paroled into the United States; (2) that he has made an application for such adjustment; (3) that he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and, (4) that an immigrant visa is immediately available to him at the time his application is filed." *Ruckbi*, 159 F.3d at 19 (paraphrasing § 1255(a)). Only after the alien has established these threshold statutory requirements must he additionally demonstrate to the Attorney General's satisfaction "that he merits relief in the exercise of discretion." *Id.* (citing *Henry v. INS*, 74 F.3d 1, 4, 7 (1st Cir.1996)).

In the present case, Petitioner Espinal's application for adjustment of status was denied based on the Immigration Judge's determination, and the BIA's affirmation,

---

**5.** Section 245 of the INA is codified at 8 U.S.C. § 1255 (1999 & Supp.2003).

that she entered into a marriage for the purpose of evading the immigration laws, thereby making her ineligible to receive an immigrant visa under section 204(c) of the INA.[6] *Docket Document No. 1.* Section 204(c) permanently bars from the United States any alien who attempts to gain an immigration benefit from a sham marriage. *See Smith v. INS,* 684 F.Supp. 1113, 1115 n. 1 (D.Mass.1988); *see also Krazoun v. Ashcroft,* 350 F.3d 208, 212 (1st Cir.2003). An alien who has entered into a marriage in an attempt to bypass the immigration laws is, therefore, ineligible to receive an immigration visa. *See* 8 U.S.C. § 1255(a).

What constitutes a discretionary decision is not defined in the IIRIRA or the INA. *Kalaw v. INS,* 133 F.3d 1147, 1150 (9th Cir.1997). However, it is clear that those decisions based on objective, factual determinations are not discretionary. *Bernal–Vallejo v. INS,* 195 F.3d 56, 62 (1st Cir.1999). The determination of whether an alien has committed marriage fraud is not one subject to the Attorney General's discretion. *See id.* Rather, this determination is subject to legal standards that guide the inquiry and is based on objective facts. *Id.* (citing *Kalaw,* 133 F.3d at 1151).

Furthermore, such determinations have been viewed as factual, subject to review under the substantial evidence standard, rather than the abuse of discretion standard. *Rodriguez v. INS,* 204 F.3d 25, 27 (1st Cir.2000); *Mendes v. INS,* 197 F.3d 6, 13 (1st Cir.1999); *see Bernal–Vallejo,* 195 F.3d at 62 (considering the differing standards of review as indicative of whether the Attorney General's determination is

discretionary). Such standard of review suggests that the inquiry is more factual than discretionary. *Kalaw,* 133 F.3d at 1151.

■ Therefore, the transitional rules of judicial review provided in section 309(c)(4)(E) do not remove appellate jurisdiction over an alien's challenge to the BIA's denial of an application for adjustment of status based on a finding of marriage fraud. If such a finding has been made, the BIA lacks discretion to grant the alien's adjustment of status petition. *See* 8 U.S.C. § 1255(a); *see also Goncalves,* 144 F.3d at 125 ("Analytically, the decision whether an alien is eligible to be considered for a particular discretionary form of relief is a statutory question separate from the discretionary component of the administrative decision whether to grant relief."). The BIA may not grant an adjustment of status petition to someone found to have committed marriage fraud, and so the agency lacks discretion. *See Bernal–Vallejo,* 195 F.3d at 62.

■ Because the denial of a petition for adjustment of status based on the determination that an alien has entered into a marriage in an effort to gain an immigration advantage is a non-discretionary matter, it is subject to judicial review. *See* section 309(c)(4)(E) of the IIRIRA transitional rules. The BIA's final decision in this case was, therefore, appealable directly to "the court of appeals for the judicial circuit in which the administrative proceeding before the special inquiry officer or immigration judge were completed."

**6.** Section 204(c) states: "[N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c) (1999 & Supp.2003).

IIRIRA § 309(c)(4)(D). Because Petitioner Espinal's appeal should have been brought in the First Circuit Court of Appeals within thirty days of the final order of deportation, and not before this court as a habeas petition, we lack jurisdiction to visit the merits of Petitioner Espinal's claim. IIRIRA §§ 309(c)(4)(C) & (c)(4)(D).

## IV.

### Conclusion

Because the decision upon which the denial of Petitioner Espinal's petition for adjustment of status was based was not discretionary, we find that judicial review of the BIA's decision was not precluded. However, Petitioners' channel for judicial review should have been through the First Circuit Court of Appeals. In accordance with the foregoing, we **GRANT** Respondents' motion for summary judgment.

**IT IS SO ORDERED.**